UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **Spring House Commercial, LLC,**<br><br>　　　Plaintiff,<br><br>v.<br><br>**City of Richmond, Kentucky, et al.,**<br><br>　　　Defendants. | Civil No. 5:21-149-KKC<br><br><br>**OPINION AND ORDER** |

** ** ** ** **

This matter is before the Court on three motions: Plaintiff Spring House Commercial, LLC's motions for a writ of mandamus [DE 1-2] and for a preliminary injunction [DE 1-3], and Defendants City of Richmond, Kentucky, Robert E. Minerich, and Phillip Williams's motion for summary judgment [DE 6.] The parties have filed responses and replies to each filing, and the motions are ripe for review. For the reasons stated in this opinion, Spring House's motion for a writ of mandamus will be denied, its motion for a preliminary injunction will be granted in part and denied in part, and Defendants' motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

The material facts of this case are straightforward and not in dispute. Plaintiff Spring House Commercial, LLC, leased a portion of property it owns in Richmond, Kentucky to Lamar Advertising for the purpose of erecting and

operating two digital billboard signs. [DE 1-1.] The City of Richmond's
Development Ordinance requires that property owners receive approval from
the Board of Adjustments prior to constructing or operating digital signage.
Section 412.7(13) of the Ordinance states:

> Digital, LCD, or LED reader board signs are not permitted in the
> City's downtown business (B-2) and neighborhood (B-1) district. No
> such sign shall be constructed, placed, or erected in any other location
> in the City unless the Board of Adjustments shall first have granted
> permission from the Board to do so at the specific location and with
> such conditions as the Board may deem appropriate.

Pursuant to that provision, Spring House submitted an application dated
January 21, 2021, to the Board of Adjustments, requesting permission to
construct two digital billboard signs on the property it had leased to Lamar.
[DE 10-1.] On March 3, 2021, the Board of Adjustments unanimously
approved Spring House's application. [DE 10-1.] The next day, Lamar
requested issuance of a permit from the City of Richmond to erect the digital
billboards. [DE 1-2 at ¶ 17.] On April 5, 2021, Defendant Robert Minerich,
the City Manager, advised that the City would not be issuing permits at that
time because Spring House and Lamar would also need a permit from the
state, and the Kentucky Transportation Cabinet had placed a moratorium on
issuing billboard permits. [DE 1-2 at 13.]

Spring House informed Defendant Minerich that it believed
withholding the permit was unlawful and a violation of its constitutional
rights, but the City still refused to issue a permit. Spring House then filed
this action in Madison County Circuit Court, naming defendants the City of
Richmond, Robert. E. Minerich, in his official capacity as City Manager, and
Phillip Williams, in his official capacity as Zoning Administrator and Codes
Administrator as the. The Defendants then removed the action to this Court.

Spring House's complaint asks the Court for a declaration of rights, a writ of mandamus, and a preliminary injunction to compel the Defendants to issue a permit for construction of its digital billboards and asserts claims alleging violations of its Due Process and First Amendment rights. [DE 1-2.] The gravamen of Spring House's complaint is that Board of Adjustments approval of its application for digital signage entitled Spring House to a permit to construct those billboard signs, and that formal issuance of the permit by the City was a ministerial act that it unlawfully refused to perform.

In subsequent briefs, the Defendants argue that Spring House mischaracterized the Development Ordinance, and that Board of Adjustments approval of its application does not entitle it to a permit. Defendants argue that the approval was only permission to operate digital signage, rather than only static signage, and that Spring House was also required to separately apply to the City for a permit to construct billboards under Section 412.2 of the Development Ordinance, which states:

> No sign . . . may be constructed, erected, moved, enlarged, illuminated, or substantially altered in design or construction without a permit issued by the City of Richmond Department of Planning and Zoning or Codes Enforcement. Application shall be made to the City as prescribed by the Department of Planning and Zoning or Codes Enforcement.

Though Defendants' initial reason for denial of Spring House's permit was based on the Kentucky Transportation Cabinet's moratorium on state-issued permits, Defendants now argue in their briefs that the permit was denied because the proposed billboards violate Section 412.7(1) of the Development Ordinance, which states:

> With the exception of properly-permitted, lawfully existing signs, and except as is otherwise specifically set forth in this ordinance, off premises business or commercial signs are prohibited. A sign shall be

> deemed to be a business or commercial sign if it advertises a business,
> commercial establishment, product, or service.

Defendants argue that the billboards proposed by Spring House would constitute an off-premise business or commercial sign, and thus are prohibited by this provision. In response, Spring House argues that even if its proposed billboards are off-premise commercial signs, Section 412.7(1) is an unlawful content-based restriction on its First Amendment rights and not a valid reason to deny its permit.

## STANDARD OF REVIEW

Three interrelated motions are before the Court, each requiring a different standard of review. Spring House simultaneously filed a motion for a writ of mandamus [DE 1-2] and motion for a preliminary injunction under Federal Rule of Civil Procedure 65 [DE 1-3], raising the same arguments in both motions. Defendants have filed a motion for summary judgment [DE 6], raising the same issues as Spring House's motions, as well as additional arguments related to Spring House's standing and Due Process claim.

## I.   Writ of Mandamus

This Court has authority to issue a writ of mandamus under 28 U.S.C. § 1651. However, "a writ of mandamus is an extraordinary remedy that [a court] will not issue absent a compelling justification." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009). "[A]lthough a federal court does not have the power to compel state officials to enforce state rights, it may 'issue a writ of mandamus ordering a state official to enforce rights protected by federal law.'" *Dascola v. City of Ann Arbor*, 22 F. Supp. 3d 736, 746 (E.D. Mich. 2014) (quoting *Hoffman v. Stump*, 97-2177, 1998 WL 869972, at *6 (6th Cir. Dec. 2, 1998)). Because Spring House's claims seek enforcement of its

First Amendment and Due Process rights under the Constitution of the United States, this Court may issue a writ of mandamus ordering city officials to enforce those rights.

Mandamus should not issue unless the "party seeking such a writ [can] satisfy two conditions: (1) that there are no other adequate means for the party to obtain the desired relief, and (2) that the party has a 'clear and indisputable' right to issuance of the writ." *Segovia v. Vill. of Minerva Park, Inc.*, No. C2-09-CV-839, 2009 U.S. Dist. LEXIS 122903, at *2 (S.D. Ohio Dec. 11, 2009) (quoting *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 658 (6th Cir. 1996)).

## II.    Preliminary Injunction

A district court gauges a request for a preliminary injunction made under Rule 65 based on four factors: (1) the plaintiff's likelihood of success on the merits; (2) irreparable harm to the plaintiff absent injunctive relief; (3) substantial harm to others resulting from an injunction; and (4) the broader public interest. *Michigan State AFL-CIO v. Schuette*, 847 F.3d 800, 803 (6th Cir. 2017). Typically, a court should determine whether the factors, as a whole, weigh in favor of granting or denying preliminary injunctive relief, with no single factor being a prerequisite to relief. *Cnty. Sec. Agency v. Ohio DOC*, 296 F.3d 477, 485 (6th Cir. 2002). However, in cases where First Amendment rights are implicated, the factors "collapse into a determination . . . of the movant's likelihood of success on the merits." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 890 (6th Cir. 2012).

### III.   Summary Judgment

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

"At the summary-judgment stage, we view the facts in the light most favorable to the nonmoving party (usually by adopting the plaintiff's version of the facts) only if there is a genuine dispute as to those facts." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (cleaned up). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "Mere speculation will not suffice to defeat a motion for summary judgment: '[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate.'" *Powell v. Cherokee Ins. Co.*, 919 F. Supp. 2d 873, 877 (W.D. Ky. 2013) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by*

*Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" *Ford Motor Co.*, 782 F.3d at 760 (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009)).

## ANALYSIS

Two issues are addressed in all three of the motions before the Court: (1) interpretation of the City of Richmond's Development Ordinance and whether Board of Adjustment approval under Section 412.7(13) of the Ordinance entitles Spring House to a permit, and (2) whether Section 412.7(1) is an unconstitutional restriction on speech.

Defendants raise two additional arguments in their motion for summary judgment: (1) that Spring House does not have standing to bring this action because its alleged injuries are not fairly traceable to Defendants, and (2) Spring House's Due Process claim fails as a matter of law because it does not have a constitutionally protected property interest at stake. The Court will first consider the arguments raised in Defendants' motion for summary judgment, and then the remaining issues raised in all three motions.

## I.   Standing

In their motion for summary judgment, Defendants argue that Spring House does not have standing to bring this action, arguing that its alleged injury is not fairly traceable to the City's denial of a permit, and that the Court cannot provide redress in this matter. According to the Defendants, Spring House cannot build its billboards even if the City issues the permit,

because Spring House does not have a permit from the Kentucky Transportation Cabinet, which Defendants claim is required to erect a billboard at the proposed location.[1]

Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and "[t]he doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has explained that "the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560). A plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of a defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

The "fairly traceable" element of standing "is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense," *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009), because "causation to support standing is not synonymous with causation sufficient to support a claim." *Parsons v. United States DOJ*, 801 F.3d 701, 715 (6th Cir. 2015). "To

---

[1] In their motion, Defendants further argue that Spring House is precluded from obtaining a permit from the Transportation Cabinet, because the state has imposed a moratorium on issuing permits while new regulatory standards are developed. However, though a moratorium was in effect when the parties filed their briefs, the Transportation Cabinet's moratorium has since been lifted. *See Outdoor Advertising Devices*, KENTUCKY TRANSPORTATION CABINET, https://transportation.ky.gov/Permits/Pages/Outdoor-Advertising-Devices.aspx (last visited March 22, 2022). The moratorium is therefore no longer relevant to this analysis.

that end, the fact that an injury is indirect does not destroy standing as a matter of course." *Parsons*, 801 F.3d at 713. Article III requires "a causal connection" between the injury and the defendant's conduct, and that the injury is not the result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

Spring House has brought claims for a declaration of rights, violation of its Due Process rights, violation of its First Amendment rights, injunctive relief, and common law writ of mandamus. The gravamen of its claims is that Defendants have unlawfully withheld a permit that would allow Spring House to erect and operate two billboards. Without the permit, Spring House cannot lawfully do so. The fact that Spring House might also have to obtain another permit before building its billboards is immaterial—there is no allegation or indication that the Transportation Cabinet has or will unlawfully withhold any necessary permits. If there were evidence that Spring House's billboards would violate some other law or regulation and would therefore be unable to build the billboards even with a permit from the City, standing might be in question. *See Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 462 (6th Cir. 2007). But there is no such evidence. Spring House alleges only that the Defendants' actions have prevented it from building its billboards, and there is no evidence that its alleged injury is the result of "the independent action of some third party." *See Lujan*, 504 U.S. at 560.

Further, the Kentucky Transportation Cabinet's applications for advertising devices require an applicant to include a "[l]ocal permit or a letter from the local governing agency stating no permit [is] required" in order to

obtain a permit from the state. *Application for Electronic
Advertising Device*, KENTUCKY TRANSPORTATION CABINET,
https://transportation.ky.gov/Organizational-Resources/Forms/TC%2099-
222.pdf (last visited March 22, 2022). Thus, even if Spring House is required
to obtain a separate permit from the state, it cannot do so without a local
permit from the City of Richmond, and refusal to grant the permit is a direct
impediment to Spring House's ability to erect its proposed billboards. The
City's denial of Spring House's permit is a sufficient "causal connection" to
confer Article III standing. Accordingly, the Court will deny Defendants'
motion for summary judgment as to the issue of Spring House's standing.

## II.    Interpretation of City's Development Ordinance

Spring House argues that Board of Adjustments approval under
Section 412.7(13) is the "only requirement" for billboard signs, and that upon
receiving approval for its digital signage application, Spring House was
entitled to a permit to construct its billboards. Defendants argue that Spring
House has misinterpreted the City's ordinances, and that Board of
Adjustments approval for digital signage merely entitles an applicant to
usage of digital signs, rather than just static signs. Board of Adjustments
approval for digital signage, they argue, is an additional, independent
regulation on top of the underlying restrictions that require separate
approval to build or erect a billboard.

Two provisions of the City's Development Ordinance are relevant to
this matter. First, Section 412.2 describes permitting requirements for all
signs within the city:

> No sign . . . may be constructed, erected, moved, enlarged,
> illuminated, or substantially altered in design or construction without

> a permit issued by the City of Richmond Department of Planning and Zoning or Codes Enforcement. Application shall be made to the City as prescribed by the Department of Planning and Zoning or Codes Enforcement.

And second, Section 412.7(13) provides additional requirements for digital, LCD, and LED signs:

> Digital, LCD, or LED reader board signs are not permitted in the City's downtown business (B-2) and neighborhood (B-1) district. No sign shall be constructed, placed, or erected in any other location in the City unless the Board of Adjustments shall first have granted an application for permission from that Board to do so at a specific location and with such conditions as the Board may deem appropriate to the location.

The question before the Court is whether Board of Adjustments approval for digital signage under Section 412.7(13) satisfies Section 412.2's permitting requirement for new signs. The Court holds that it does not.

A federal court interpreting a state law, including a municipal ordinance, applies the rules of construction that the state supreme court applies when construing its own statutes. *Faber v. Ciox Health, LLC*, 944 F.3d 593, 607 n.7 (6th Cir. 2019); *Kelly v. City of Fort Thomas*, Civil Action No. 2: 08-54-DCR, 2008 U.S. Dist. LEXIS 95920, at *34 n.11 (E.D. Ky. Nov. 24, 2008). The Kentucky Supreme Court has stated that a court's primary goal in construing a statute is to give effect to legislative intent. *Commonwealth v. Curry*, 607 S.W.3d 618, 624 (Ky. 2020). That intent is derived from the language of the law at issue and the context of the matter being considered. *Id.* Courts presume that the legislature intended for the law "to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Id.*

Applying this guidance to the City of Richmond's Development Ordinance shows that Spring House's reading of the Ordinance is untenable.

Spring House interprets Section 412.7(13) as outlining the conditions that satisfy Section 412.2's permitting requirement for signs, but the plain language of the Ordinance does not support such an interpretation. Section 412.2 states that every sign must have a permit, and that "application shall be made to the City as prescribed by the Department of Planning and Zoning or Codes Enforcement." Thus, to receive the permit described in Section 412.2, one applies to the City of Richmond via a process prescribed by one of the city departments. Section 412.7(13) describes an application process to the *Board of Adjustments*—not to a city department. Spring House's interpretation makes "Board of Adjustments" in Section 412.7(13) interchangeable with the city departments described in Section 412.2, giving those terms inconsistent meaning within the Ordinance. The Court declines this strained reading of the Ordinance, as doing so would fail to give all its parts meaning and create unnecessary tension between the two provisions.

Spring House argues that Section 412.7(13) is the only place in the Ordinance that describes an application process for digital signage, but Section 412.2 clearly states that the application process is not prescribed by the Ordinance. Section 412.2 delegates the application process to the Departments of Planning and Zoning or Codes Enforcement. A permit application process prescribed by a city department, which is part of the city's executive branch, would not appear in the Ordinance because city departments do not make legislation—the municipal legislative body does. And here, the municipal legislature delegated the permitting process for new signs to the city's executive branch. It follows then, that any application

process described in the Ordinance is not the application process referred to in Section 412.2.

Spring House's interpretation also leads to incongruent results. It argues that Section 412.7(13) outlines the permitting process for digital signage, but the Development Ordinance does not outline any similar process for static signs. Under Spring House's interpretation, there is no mechanism by which one could obtain a permit for static signs.

Spring House's interpretation renders provisions of the Ordinance contradictory, inconsistent, and defies its plain language. Reading Board of Adjustments approval under Section 412.7(13) as satisfying the permitting requirement of Section 412.2 puts those provisions in tension, rather than in harmony. The plain language of the Ordinance shows that Section 412.2 requires a permit for construction of any sign, and that Section 412.7(13) is a separate, additional approval process to construct or operate digital signage. Board of Adjustments approval does not entitle an applicant to build its proposed digital signage, because the applicant must separately apply for and receive a permit from the Department of Planning and Zoning or Codes enforcement as required by Section 412.2.

Accordingly, Board of Adjustments approval of Spring House's application does not entitle it to the permit described in Section 412.2. It only gives Spring House the ability to construct and operate digital signage where a sign is otherwise permitted in accordance with the Development Ordinance. The Court will therefore grant summary judgment to Defendants as to the issue of whether Spring House is entitled to a permit for construction of billboards based on Board of Adjustments approval under Section 412.7(13).

– 13 –

### III.    Protected Property Interest

In their motion for summary judgment, Defendants argue that Spring House's Due Process claim fails as a matter of law because it has no protected property interest based on Board of Adjustments approval by itself. Spring House argues that it has already been granted approval for the issuance of a permit to build its billboards based on Board of Adjustments approval of its application for digital signage. However, as previously discussed, Board of Adjustments approval does not entitle Spring House to a permit to construct billboards.

To succeed on its Due Process claim, Spring House must establish that a "life, liberty, or property" interest is implicated by Defendants' conduct. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). "Without a protected liberty or property interest, there can be no federal procedural Due Process claim." *West v. Ky. Horse Racing Comm'n*, 425 F. Supp. 3d 793, 806 (E.D. Ky. 2019) (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007)).

Spring House asserts that it has a protected property interest in the property and operation of billboards granted by the Board of Adjustments. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "Constitutionally protected property interests are not created by the Constitution itself but rather by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that

secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

In the context of a discretionary zoning decision, where an entity granting a zoning permit has discretion to deny a permit application despite applicant's compliance with the application's minimum requirements, the permit applicant has no constitutionally protected property interest. *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 203 (6th Cir. 1995); *Silver v. Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). If there is "unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." *Med Corp.*, 296 F.3d at 410 (quoting *Roth*, 408 U.S. at 577). Thus, in order to establish a constitutionally protected property interest in "all the financial and other benefits" of building and operating its proposed billboards, Spring House "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [the City] to rescind the benefit." *Id.* at 410.

Spring House has failed to do this. As already discussed in this opinion, Board of Adjustments approval does not entitle an applicant to a permit for erection or construction of a billboard—it merely allows an applicant to operate digital, rather than static, signage. Spring House argues that "there is no limiting language or language in the Ordinance that would require additional approval from some unidentified third party," [DE 12 at 16], but it overlooks the plain language of Section 412.2, which requires additional approval from the City Department of Planning and Zoning or Codes

Enforcement. Contrary to Spring House's assertion, Defendants did have discretion to withhold a permit after the Board of Adjustments approved its application, because as described above, the application for a permit to build a billboard is a separate, distinct application.

According to the City of Richmond's Development Ordinance, a decision to approve or deny a permit to construct a billboard is subject to the discretion of the Department of Planning and Zoning or Codes Enforcement. Spring House has pointed to no law, ordinance, regulation or other indication that the City's discretion is limited, because Board of Adjustments approval for digital signage is not a limitation on that discretion—it is a separate and distinct approval process.

Thus, Spring House has failed to establish a constitutionally protected property interest in a permit to build or erect billboards. Accordingly, the Court will grant Defendants summary judgment as to Spring House's Due Process claim.

## IV. Constitutionality of Section 412.7(1)

The Defendants state that denial of Spring House's permit to erect two billboard signs on its property was proper pursuant to Section 412.7(1) of the Development Ordinance, which prohibits signs that advertise "off premise . . . business[es], commercial establishment[s], product[s], or service[s]." Spring House argues that the Defendants' invocation of Section 412.7(1) to deny the permit is an unlawful restriction of its speech. According to Spring House, Section 412.7(1) unlawfully restricts Spring House's speech based upon the content of that speech, because it differentiates between "on-premises" and "off-premises" speech.

A.    Content-Based Restrictions

"Under the First Amendment applicable to the states through the Fourteenth Amendment, a government, such as a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 702 (6th Cir. 2020) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). As a case that implicates a First Amendment right, the first step in the Court's analysis here is to "determine the level of scrutiny to apply based on whether the restriction is content-based or content-neutral." *Thomas v. Bright*, 937 F.3d 721, 729 (6th Cir. 2019) (citing *Reed*, 576 U.S. at 163). In *Reed*, the Supreme Court held that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 576 U.S. at 163.

"Although '[d]eciding whether a particular regulation is content-based or content-neutral is not always a simple task,' the Supreme Court has provided several means for doing so." *Thomas*, 937 F.3d 721 at 729 (quoting *Turner Broad. Sys. Inc., v. FCC*, 512 U.S. 622, 642 (1994)). As applicable here, a law regulating speech is content-based in its application if "it requires enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *FCC v. League of Women Voters*, 468 U.S. 364, 383 (1984)) (cleaned up).

Here, the City of Richmond's restriction on speech is clearly content-based. To determine whether Section 412.7(1) applies to a given sign, city

enforcement authorities will necessarily have to examine the content of the message in order to determine whether a sign "advertises a[n] [off-premise] business, commercial establishment, product, or service." In a case decided just last year, the Sixth Circuit explained that a regulation permitting on-premise advertisement but prohibiting off-premise advertisement is a content-based restriction. *L.D. Mgmt. Co. v. Gray*, 988 F.3d 836, 839 (6th Cir. 2021) (holding that a law regulating off-premise advertising but permitting on-premise advertising to be a content-based regulation of speech "[b]ecause the message on the billboard makes all the difference"); *see also Thomas v. Bright*, 937 F.3d 721, 729 (6th Cir. 2019) ("The Billboard Act's on-premises exception scheme is a content-based regulation of (restriction on) free speech."). Section 412.7(1)'s exception for on-premise commercial advertising is materially indistinguishable from the schemes in *Gray* and *Thomas*. It "is neither a close call nor difficult question" for the Court to determine that Section 412.7(1) is "indisputabl[y]" a content-based regulation on speech and therefore subject to strict scrutiny. *See Thomas*, 937 F.3d 721, 729 (6th Cir. 2019).

### B.    Commercial Speech Doctrine

The Defendants argue that even if Section 412.7(1) is a content-based restriction on speech, it should be subject to intermediate review under *Central Hudson*, because it expressly regulates only commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (holding that the government may restrict or prohibit certain commercial speech if the governmental interest in regulating the speech is substantial).

However, the Sixth Circuit has interpreted the United States Supreme Court's decision in *Reed* to hold that content-based regulations of speech are subject to strict scrutiny regardless of whether they regulate purely commercial speech. In *International Outdoor, Inc. v. City of Troy*, the court was unequivocal:

> [T]he intermediate-scrutiny standard applicable to commercial speech under *Central Hudson*, 447 U.S. at 563, applies only to a speech regulation that is content-neutral on its face. That is, a regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*.

974 F.3d 690, 703 (6th Cir. 2020).

In support of their argument that intermediate scrutiny should apply, Defendants point out that the regulations at issue *Gray* and *Thomas* applied to commercial and non-commercial speech alike, whereas Section 412.7(1) applies only to purely commercial speech, and therefore argue neither is controlling here. *See Gray*, 988 F.3d 836; *Thomas*, 937 F.3d 721. Defendants further argue that *Gray* explicitly leaves open the question of whether the *Reed* analysis applying strict scrutiny governs content-based regulations directed solely to commercial speech. In support of their argument, Defendants emphasize the Sixth Circuit's statement in *Gray* that the court "leave[s] for another day whether, after *Reed*, the [*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981)] judgment still controls the validity of a billboard law that regulates solely commercial speech and draws an on-site/off-site distinction." *Gray*, 988 F.3d at 841.

But the full context of *Gray* makes clear that the court was not leaving open the question of whether strict scrutiny under *Reed* applies to content-based regulations of commercial speech. Instead, in dicta, the court merely

– 19 –

stated that the case before it did not present the opportunity to consider the narrow question of whether courts should defer to lawmakers' judgment in deciding whether a billboard regulation advances a government's interest in safety when a court applies intermediate scrutiny, as the Supreme Court had held in *Metromedia*. *Gray*, 988 F.3d at 840–41. The court in *Gray* applied strict scrutiny, and thus did not have the opportunity to address the issue of deference to lawmakers' judgment under intermediate scrutiny.

The Defendants' reading of *Gray*'s holding is in direct contradiction to the Sixth Circuit's prior holding in *International Outdoor*. Further, it ignores that *Gray* cites *International Outdoor* approvingly for the proposition that *Reed*'s principles "apply even when the speech at issue is commercial." *Gray*, 988 F.3d at 840. When read in its full context, *Gray*'s holding is congruent with *International Outdoor*, which was clear and unambiguous in its holding that "a regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*." *Int'l Outdoor*, 974 F.3d at 703.

Accordingly, the Court need not consider whether Spring House's proposed billboards constitute commercial or non-commercial speech. The City of Richmond's ordinance is a content-based restriction on speech that distinguishes between on-site and off-site advertising and is therefore subject to review under strict scrutiny.

## C.   Strict Scrutiny

To survive "the gauntlet of strict scrutiny," the Defendants "must show that [Section 412.7(1)]'s differentiation between on-site and off-site signs furthers a compelling governmental interest and is narrowly tailored to that end." *Gray*, 988 F.3d at 839 (quoting *Reed*, 576 U.S. at 171) (cleaned up). "It

is the rare case in which a law survives strict scrutiny," and this is not one of those cases. *Burson v. Freeman*, 504 U.S. 191, 211 (1992) (cleaned up). The Defendants have failed to show that Section 412.7(1) furthers a compelling governmental interest, or that it is narrowly tailored.

### 1.   *Compelling Interest*

The Defendants proffer interests that they assert are "compelling": promoting traffic safety and protecting the community's visual appeal. [DE 14 at 8–9.] They argue that those interests are furthered by Section 412.7(1) because it limits the number of billboards and other signs within the City.

While a government's interest in public aesthetics has been found to be "substantial" and therefore sufficient to satisfy intermediate scrutiny, "no court has ever found public aesthetics to be a *compelling* interest" that would satisfy strict scrutiny. *Thomas v. Bright*, 937 F.3d 721, 733 (6th Cir. 2019). Similarly, while the Supreme Court and the Sixth Circuit have recognized a compelling interest in highway safety in the Fourth Amendment context, neither court has done so in the First Amendment context. *Id.* In *Thomas*, the Sixth Circuit expressly declined to hold either public aesthetics or traffic safety to be a compelling interest, and this Court will do the same. *Id.*

### 2.   *Narrowly Tailored*

Even if the Court were to find public aesthetics and traffic safety to be compelling interests, Section 412.7(1) fails the narrow tailoring prong of strict scrutiny. "To establish that a law regulating or restricting speech is narrowly tailored, 'the Government carries the burden of showing that the challenged regulation advances the Government's [compelling] interest in a direct and material way.'" *Thomas*, 937 F.3d at 734 (quoting *Rubin v. Coors Brewing*

– 21 –

*Co.*, 514 U.S. 476, 487 (1995)). "While the regulation need not be perfectly tailored, the State's burden is not carried if the regulation 'provides only ineffective or remote support' of the claimed compelling interest." *Id.* (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999)). An ordinance regulating the display of signs can fail narrow tailoring on the grounds that it is either overinclusive or underinclusive. *Id.* at 734 (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 50 (1994)). Here, Spring House only challenges that the law is underinclusive.

Challenging a law as underinclusive "generally appropriate when a regulation functions 'through the combined operation of a general speech restriction and [selected] exemptions.'" *Id.* at 735 (quoting *Gilleo*, 512 U.S. at 51). The Sixth Circuit explains:

> Such a law is problematic because its exemptions discriminate on the basis of the signs' messages. By picking and choosing which subjects or speakers are exempted, the government may attempt to give one side of a debatable public question an advantage in expressing its views to the people. The underinclusiveness of a law can be cured by either eliminating the exemptions such that all speech is treated equally or expanding the exemptions to include more protected speech.

*Id.* (cleaned up).

Here, Section 412.7(1) is fatality underinclusive. The Defendants argue that Section 412.7(1)'s prohibition of new off-premise commercial signs limits the number of signs in the city, which in turn furthers its interests in public aesthetics and traffic safety. The problem is that the provision does not limit the number of signs that can exist, it only limits the message a sign can display. For example, under the Ordinance, a liquor store could place hundreds of signs on its property advertising "Cheap beer sold here!" but would not be permitted to display even a single sign advertising off-site

alcoholism counseling. If it is the number of signs that pose a threat to these purported interests, this ordinance does nothing to advance that interest.

Further, signs advertising off-site commercial activity are no more of a danger to public aesthetics and traffic safety than those advertising on-site commercial activity. Taking aesthetics as an example, signs about off-premise commercial activity pose "no . . . greater eyesore" than signs about on-premise commercial activity. *Gray*, 988 F.3d at 840 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 425 (1993) ("That precise problem doomed Cincinnati's efforts to regulate commercial newsracks differently from noncommercial ones.")). For example, a sign displayed on an apple orchard's property advertising "Cider sold here!" is no more of an eyesore than a sign down the road on a different property advertising "Cider sold ahead!"

The issue is the same for traffic safety. The Defendants have offered no reason to believe that signs promoting off-premise commercial activity pose a greater threat to safety than signs promoting on-premise commercial activity. *See id.*

Thus, even if the Court were to hold the City's stated interests to be compelling, Section 412.7(1) would fail narrow tailoring. Because the City of Richmond's Development Ordinance Section 412.7(1) is a content-based restriction on speech that does not further a compelling government interest and is not narrowly tailored, the Court holds it to be an unlawful restriction of speech.

## V.    Resolution of Spring House's Motions

Spring House has asked the Court for both a writ of mandamus and a preliminary injunction compelling the Defendants "to issue a permit for erection and operation of the Digital Billboards which were approved by the City of Richmond Board of Adjustment." [DE 1-2; DE 1-3.] In its motions, Spring House argues that the Board of Adjustment's approval of its application for digital signage constituted approval for a permit required by Section 412.2 of the Development Ordinance. However, as explained above, Board of Adjustments approval is a separate, additional approval that merely allows Spring House to operate digital signage where it is otherwise permitted to erect and operate its billboards. Spring House has thus failed to show a substantial likelihood of success on that issue, and the Court will not compel Defendants to issue a permit on that basis. Likewise, Spring House has failed to show it has a "clear and indisputable right" to a writ of mandamus on the basis of Board of Adjustments approval.

However, the City denied Spring House's permit to erect billboards on the grounds that the billboards would violate Section 412.7(1) of the Development Ordinance. As explained above, Section 412.7(1) is an unlawful content-based restriction on Spring House's First Amendment rights. Spring House has thus shown a substantial likelihood of success on the merits of its First Amendment claim. Because it is likely to succeed on the merits of that claim, the factor of irreparable harm is also present in this case. *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)). Additionally, because Spring House has shown a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment. *Deja Vu of*

*Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001). Moreover, "it is always in the public interest to prevent violation of a party's constitutional rights." *Id.* (cleaned up).

The Court will therefore grant in part Spring House's motion for preliminary injunction, insofar as it asks the Court to enjoin the Defendants from enforcing Section 412.7(1) to deny Spring House a billboard permit. However, the Court will not issue a writ of mandamus because Spring House has not shown it has no other adequate means to obtain relief. To the contrary, the other relief sought in this action clearly shows it does have such means.

## CONCLUSION

Accordingly, for the reasons stated in this opinion and the Court otherwise being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Plaintiff Spring House Commercial's motion for a writ of mandamus [DE 1-2] is **DENIED**;

(2) Plaintiff Spring House Commercial's motion for a preliminary injunction [DE 1-3] is **GRANTED** insofar as it asks the Court to enjoin enforcement of Section 412.7(1) of the City of Richmond's Development Ordinance:

    (a) To the extent that Spring House's application for a permit to erect digital billboards has been denied on the basis of Section 412.7(1) of the City of Richmond Development Ordinance, Spring House's motion is **GRANTED** and Defendants are **ENJOINED** from enforcing Section 412.7(1);

    (b) However, Spring House's motion is **DENIED** to the extent that it claims it is entitled to a permit to erect digital billboards based upon Board of Adjustments

approval of its application made under Section 412.7(13) of the Development Ordinance.

(3)  Defendants' motion for summary judgment [DE 6] is **GRANTED IN PART** and **DENIED IN PART**:

(a)  The motion is **GRANTED** to the extent that Defendants ask the Court to find that Board of Adjustments approval for digital signage under Section 412.7(13) of the Development Ordinance does not entitle an applicant to approval for a permit under Section 412.2;

(b)  The motion is also **GRANTED** as to Spring House Commercial's Due Process claim. Therefore, Count II of Spring House Commercial's complaint, alleging violation of Plaintiff's Due Process rights in contravention of 42 U.S.C. § 1983, is **DISMISSED WITH PREJUDICE**;

(c)  The Defendants' motion is **DENIED** as to all other issues raised in the motion.

This 31st day of March, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY