UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| SPRING HOUSE COMMERCIAL, LLC,<br>    Plaintiff,<br><br>v.<br><br>CITY OF RICHMOND, KENTUCKY, *et al.*,<br>    Defendants. | CIVIL ACTION NO. 5:21-149-KKC<br><br><br>OPINION AND ORDER |

*** *** ***

This matter is before the Court on two motions filed by Defendants City of Richmond, Kentucky, Robert E. Minerich, and Phillip Williams: a motion to dissolve the preliminary injunction (DE 18) and a motion to dismiss (DE 23). For the following reasons, the Court grants both motions.

**I.   Background**

Plaintiff Spring House Commercial, LLC owns property in Richmond, Kentucky. (Compl. ¶ 8.) Plaintiff leased that property to Lamar Advertising Company ("Lamar") so that Lamar could build and operate two digital billboards on the property. (*Id.* ¶ 9.)

The City of Richmond enacted a Development Ordinance (the "Ordinance"), which sets forth certain procedures for constructing billboards within the Richmond. (*See* ¶ 10.) As found in Section 412.1 of the Ordinance, the stated purpose of those procedures is as follows:

> [T]o protect the public health, safety, and general welfare by regulating existing and proposed outdoor advertising, billboards, and outdoor signs of all types. It is further the intent of this section to protect property values, create a more attractive economic and business climate, enhance and protect the physical appearance of the community, and preserve the scenic and natural beauty of the City. Additionally this section is designed to reduce sign or advertising distractions and obstructions that may contribute to vehicular accidents, reduce hazards that may be caused by signs overhanging or

1

> projecting over public rights-of-way, and keep intact and enhance community aesthetics and development.

(DE 6-3 at 63.) Section 412.2 of the Development Ordinance states:

> No sign . . . may be constructed, erected, moved, enlarged, illuminated, or substantially altered in design or construction without a permit issued by the City of Richmond Department of Planning and Zoning or Codes Enforcement. Application shall be made to the City as prescribed by the Department of Planning and Zoning or Codes Enforcement.

(DE 15 at 3.) As it relates to digital billboards, Section 412.7(13) of the Ordinance provides in relevant part: "No such sign shall be constructed, placed, or erected in any other location in the City unless the Board of Adjustments shall first have granted permission from the Board to do so at the specific location and with such conditions as the Board may deem appropriate." (Compl. ¶ 10.) Section 412.7(1) of the Development Ordinance places restrictions on off-premises commercial signs: "With the exception of properly-permitted, lawfully existing signs, and except as is otherwise specifically set forth in this ordinance, off premises business or commercial signs are prohibited. A sign shall be deemed to be a business or commercial sign if it advertises a business, commercial establishment, product, or service." (DE 15 at 3.)

Plaintiff submitted a request to the Board of Adjustments (the "BOA") for permission to construct the two digital billboards. (Compl. ¶ 13.) At a public hearing on the request, the BOA unanimously granted its approval. (*Id.* ¶ 14.)

Before Lamar could construct the billboards, Plaintiff needed to obtain a permit from the City of Richmond, its City Manager (Defendant Robert E. Minerich), and/or its Zoning Administrator and Codes Administrator (Defendant Phillip Williams). (*Id.* ¶ 15.) Lamar accordingly requested a permit from the City of Richmond, relying on the approval from the BOA. (*Id.* ¶ 17; DE 1-1 at 13.) The City rejected the request. (*Id.*) In the City's response, Defendant Minerich stated that Plaintiff would need to obtain a permit from the State prior

2

to any construction. (DE 1-1 at 13.) Because the State had a moratorium on the construction of any new billboards, the City was not issuing permits at that time. (*Id.*) That moratorium was later lifted. (DE 15 at 8 n.1.) In its subsequent briefing, Defendants argued that the City denied the permit because the proposed billboards were off-premises business and commercial signs that would violate Section 412.7(1) of the Ordinance. (*Id.* at 3-4.)

### A. Relevant Procedural History

On May 21, 2021, Plaintiff brought its initial complaint against Defendants in Madison County Circuit Court, arguing that Defendants had no authority to reject the permit request after the BOA already approved the construction. (Compl. ¶ 18.) In the complaint, Plaintiff brought claims for a declaration of rights and violations of Plaintiff's due process and First Amendment rights pursuant to 42 U.S.C. §§ 1983 and 1988. (*Id.* ¶¶ 24-42.) Plaintiff also filed a petition for injunctive relief and a writ of mandamus. (*See id.* ¶¶ 43-54.) Defendants subsequently removed the action to this Court and moved for summary judgment. (*See* DE 1; DE 6.)

The Court granted summary judgment for Defendants as to Plaintiff's due process claim and Plaintiff's claim that it was entitled to a permit under Section 412.7(13). (DE 15 at 13, 16.) The Court also denied Plaintiff's petition for a writ of mandamus. (*Id.* at 25.) However, the Court found that Section 412.7(1) was unlawful because the on-premises and off-premises distinction was a content-based restriction that failed strict scrutiny review. (*Id.* at 23.) In reaching this conclusion, the Court relied on existing Sixth Circuit precedent holding that nearly identical on-premises and off-premises restrictions were content-based, citing *L.D. Management Co. v. Gray*, 988 F.3d 836 (6th Cir. 2021) and *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019). (*Id.* at 18.) Accordingly, the Court granted Plaintiff's motion for a

3

preliminary injunction to the extent that Plaintiff sought to enjoin Defendants from enforcing Section 412.7(1). (*Id.* at 25.)

### B. Instant Motions

Following this Court's decision, the Supreme Court issued *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022), where it held that off-premises/on-premises distinctions similar to that found in Section 412.7(1) were content-neutral restrictions only subject to intermediate scrutiny. Based on that decision, Defendants move to dissolve the preliminary injunction. (DE 18.)

At the same time, Plaintiff filed an amended complaint, raising claims related to the City's "new application process." (DE 21 ¶ 18.) After the Court enjoined the City from enforcing Section 412.7(1), the City sent a letter to Plaintiff's counsel denying its original permit application because it did not comply with newly promulgated state regulations and directing Plaintiff to resubmit a new application that complied with the new regulations. (DE 21-1 at 14.) The City also advised Plaintiff that after it received the resubmitted application, the Planning and Zoning Committee would need to make an initial zoning classification for the billboards due, in part, to the new state regulations. (*Id.*) The new state regulations designate billboards as "Advertising Devices."[1] (*Id.* at 15.) Because the Ordinance does not include any regulations pertaining to "Advertising Devices" and now no longer includes any enforceable provisions referencing off-premises advertising, the City considers the proposed billboards as "unclassified uses." (*Id.* at 15-16.) Applicants must present unclassified uses

---

[1] "'Advertising device' means any billboard, sign, notice, poster, display, or other device, including the structure erected or used in connection with the display or device and all lighting or other attachments used in connection with the display or device, that is: (a) Operated or owned by a person or entity who is earning compensation directly or indirectly from a third party or parties for the placement of a message on the device; and (b) Intended to attract the attention of operators of motor vehicles on the highways[.]" Ky. Rev. Stat. Ann. § 177.830(5).

4

to the Planning and Zoning Commission to determine the appropriate zoning classification. (*Id.* at 16.)[2]

Plaintiff alleges that the City's "newfound standard" for approval is "arbitrary, capricious, and unreasonable." (First Am. Compl. ¶ 25.) Accordingly, Plaintiff seeks a declaration of rights to that effect. (*Id.* ¶¶ 24-28.) Plaintiff also brings claims under 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiff's First Amendment rights and for unlawful customs and practices in violation of the First Amendment. (*Id.* ¶¶ 29-35, 43-52.) Finally, Plaintiff requests injunctive relief, attorney's fees, and punitive damages. (*Id.* ¶¶ 36-42, 55-58.)

## II. Motion to Dissolve Preliminary Injunction

### A. Standard

On a motion for a preliminary injunction, the Court considers: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013). In a First Amendment case, "the likelihood of success on the merits often will be the determinative factor." *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (citation and quotation marks omitted); *see also Connection*

---

[2] The relevant provision states: "The Planning and Zoning Commission shall, upon application to it, make a determination as to whether an unclassified use is appropriate within a given zoning classification, taking into consideration the classified uses most closely related to the use being proposed and the zoning classifications in which such uses are permitted or conditional uses. When the Commission has determined which, if any, zoning classification is appropriate for the proposed unclassified use[,] it shall further determine whether such use shall be a permitted use or a conditional use within such zoning classification." (DE 21-1 at 16.)

5

*Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("Likewise, the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights.") (citation and quotation marks omitted); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]o the extent that the plaintiffs have established a substantial likelihood that they could succeed on the merits of their First Amendment claims, they have also established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights.").

To succeed on a motion to dissolve an injunction, the movant must show "significant changes in fact, law, or circumstance since the previous ruling." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012). Defendants request that the Court dissolve the existing preliminary injunction based on a change in law since the Court's prior summary judgment opinion, relying on the Supreme Court's recent opinion in *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022).

### B.    Effect of the *City of Austin* Case

Pursuant to the First Amendment, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This applies to local governments through the Fourteenth Amendment. *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012). When a local government regulates speech, the Court first determines what level of scrutiny it must apply in determining whether that regulation is constitutional. *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 472 (6th Cir. 2016). While content-based regulations are subject to strict scrutiny, content-neutral time, place, and manner regulations are subject to intermediate scrutiny. *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d

6

690, 703 (6th Cir. 2020); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 262 F.3d 543, 551 (6th Cir. 2001). A content-neutral regulation is permissible if it "serve[s] a substantial governmental interest," is "narrowly tailored" to serve that interest, and "do[es] not unreasonably limit alternative avenues of communication." *Id.* at 554. "[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ohio Citizen Action*, 671 F.3d at 571-72 (citation and quotation marks omitted). "All that is required is a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016) (citation and quotation marks omitted).

In *City of Austin*, the City's code for signage distinguished on-premises signs and off-premises signs. *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1469 (2022). Under the code, an "off-premise sign" was "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site." *Id.* The code prohibited the construction of new off-premises signs, while grandfathering in existing off-premises signs. *Id.* Since the regulations differentiated based on the location rather than the topic or subject matter of the speech, the "on-/off-premises distinction" was "similar to ordinary time, place, or manner restrictions." *Id.* at 1473. Because "[t]he City's off-premises distinction require[d] an examination of speech only in service of drawing neutral, location-based lines," the Court found that the regulation was content-neutral and therefore, only subject to intermediate scrutiny. *Id.* at 1471. However, if a facially content-neutral regulation was enacted for "an

7

impermissible purpose or justification," that impermissible purpose may render the regulation content-based, and accordingly, strict scrutiny would still apply. *Id.* at 1476.

Defendants argue that the code at issue in *City of Austin* is similar to Section 412.7(1) because it also distinguishes between off-premises and on-premises commercial advertising based on the location of that advertisement. (DE 18 at 5.) Therefore, Section 412.7(1) is content-neutral, and intermediate scrutiny applies instead. Under that standard, Defendants maintain that Section 412.7(1) survives review. (*Id.* at 5-8.)

Plaintiff concedes that *City of Austin* changes the legal landscape for the level of scrutiny applied to regulations distinguishing between off-premises and on-premises signage. (DE 19 at 1.) Plaintiff does not appear to explicitly dispute that aesthetics and public safety generally constitute substantial governmental interests,[3] that Section 412.7(1) is narrowly tailored to serve those purported interests, or that Section 412.7(1) meets the intermediate scrutiny standard.[4] Instead, Plaintiff's main contention is that Section 412.7(1) has an "impermissible purpose or justification," and the stated government interests are disingenuous.[5] (DE 19 at 3-4.) According to Plaintiff, this means that Section 412.7(1) remains subject to strict scrutiny, which it cannot withstand. (*Id.*)

---

[3] Nor could it. The Supreme Court has recognized aesthetics and safety as substantial government interests. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981). The Court also found in its March 31, 2022 Opinion & Order that aesthetics were a substantial government interest. (DE 15 at 21.)

[4] Even though the Court previously found that Section 412.7(1) was not narrowly tailored, that was under the lens of strict scrutiny, which is a different standard. (DE 15 at 23.) The Supreme Court has also found that, for purposes of intermediate scrutiny, the substantial government interests of aesthetics and safety are narrowly tailored to regulations prohibiting off-premises commercial speech. *Metromedia*, 453 U.S. at 509-511. Given this precedent, the Court reaches the same conclusion here.

[5] Plaintiff argues that Defendants' purported government interests are actually "insubstantial" due to Defendants' allegedly inconsistent application of Section 412.7(1). (*See* DE 19 at 4-5.) Confusingly, this seems to conflate the analysis of the nature of the government's interests into the analysis of whether Section 412.7(1) has an impermissible purpose. Plaintiff does not challenge the recognition of aesthetics and safety as substantial

8

To establish that Section 412.7(1) has an impermissible purpose or justification, Plaintiff makes several arguments. None succeed. The cited evidence of an impermissible purpose does not show that Section 412.7(1) was enacted for or relied upon for nefarious reasons requiring the application of strict scrutiny review.

First, Plaintiff points to the fact that Defendants allowed the BOA to approve the initial application instead of raising any issues related to Sections 412.1 and 412.7(1). (DE 19 at 3.) However, the Court's March 31, 2022 Opinion & Order forecloses that argument. (DE 15 at 13.) This Court found that Plaintiff must take two actions to construct a new digital billboard: 1) it must obtain a permit from the City's Department of Planning and Zoning or Codes Enforcement by submitting an application to those departments as set forth in Section 412.2; and 2) it must obtain approval from the BOA to construct a digital billboard as set forth in Section 412.7(13). (*Id.*) Therefore, the process of obtaining a permit from Defendants is separate from the process of obtaining approval from the BOA. It was up to the BOA to raise those issues, not Defendants.

Plaintiff also mentions that Defendants did not reference Sections 412.1 and 412.7(1) when first denying its request for a permit. (DE 19 at 3-4.) As expressed in Defendants' denial of the request, the State had imposed a moratorium on the issuance of new permits at that time. (DE 1-1 at 13; DE 15 at 8 n.1.) Plaintiff does not explain how Defendants' failure to list every potential deficiency in Plaintiff's application during the duration of the moratorium shows that the purpose of Section 412.7(1) is impermissible.

---

government interests in case law, and the inconsistent application of Section 412.7(1) relates to its potentially impermissible purpose. The Court will accordingly construe the argument that Defendants' given interests are, in reality, insubstantial as one bearing on whether Section 412.7(1) has an impermissible purpose.

Finally, Plaintiff states that "Defendants disparately and selectively apply certain portions of the Ordinance only to prevent Spring House's expression of speech." (DE 19 at 4.) To support this assertion, Plaintiff alleges that one month before Plaintiff submitted its application, Lamar submitted "a nearly identical application" for a billboard that was approved. (*Id.*) Therefore, "the only logical explanation is they disagree with the perceived content of [Plaintiff's] message." (*Id.*) This argument suffers from several infirmities.

Section 412.7(1) prohibits off-premises business or commercial signs "[w]ith the exception of properly-permitted, lawfully existing signs." This exception effectively operates as a grandfathering provision for any off-premises business or commercial signs with permits that pre-dated the passage of Section 412.7(1). Lamar submitted the "nearly identical" application to the BOA in order convert a properly-permitted, lawfully existing *static* billboard into a *digital* billboard. (DE 6-4 ¶ 7.) Defendants had no reason to invoke Section 412.7(1) because the billboard fell within the grandfathering exception, and therefore, Section 412.7(1) did not apply. Lamar only needed approval from the BOA since it had already obtained a permit through the separate permitting process. (*See* DE 15 at 13.) Therefore, the circumstances surrounding Lamar's previous application differed entirely from the circumstances surrounding Plaintiff's instant application, which seeks a permit to construct two *new* digital billboards. Due to the differences in circumstances, Defendants' disparate treatment of the two applications does not indicate that an impermissible purpose was at play. Instead, Defendants' actions are a straightforward application of the relevant regulations.

Plaintiff provides no other facts to demonstrate that Defendants applied Section 412.7(1) differently to Plaintiff's application as compared to that of other entities or that Section 412.7(1) otherwise has an impermissible purpose. While Plaintiff holds tight to the claim that Defendants are motivated by their disagreement with the "perceived content" of

10

Plaintiff's billboards, Plaintiff does not identify exactly what the proposed content is. Plaintiff has not shown that it has definitively determined the specific content of the billboards such that Defendants could deny Plaintiff's application based on that content. Plaintiff's hypothetical conjectures of an impermissible purpose are not sufficient to show "more than a *mere possibility* of success" on the merits. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (emphasis added) (citations and quotation marks omitted).

Because Plaintiff has not adequately demonstrated that Section 412.7(1) has an impermissible purpose, it likewise has not demonstrated that strict scrutiny applies. Since Section 412.7(1) passes the intermediate scrutiny standard, the Court cannot find that Plaintiff has a high degree of likelihood of success on the merits, the dispositive factor for purposes of this First Amendment inquiry.[6] *See Liberty Coins, LLC*, 748 F.3d at 689. In this instance, *City of Austin* created a significant change in law that warrants dissolution of the Court's previous injunction. The Court grants Defendants' motion to dissolve the preliminary injunction.

## III. Motion to Dismiss

### A. Standard

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual content is only sufficient if it "raise[s] a right to relief

---

[6] This is also the only factor that parties seemingly dispute.

11

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[M]ere conclusory statements" are not enough. *Iqbal*, 556 U.S. at 679. In determining whether a complaint states a claim for the relief sought, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) (citations and quotation marks omitted).

As an initial matter, the Court notes that many of Plaintiff's arguments in its response to the motion to dismiss reflect its arguments in the response to the motion to dissolve the preliminary injunction. The motion to dissolve the preliminary injunction primarily focuses on arguments arising from Plaintiff's original complaint. Plaintiff's First Amended Complaint is the operative complaint. Therefore, the thrust of the Court's analysis depends on Plaintiff's claims as advanced in the First Amended Complaint rather than the original complaint.

Defendants argue that if the preliminary injunction is dissolved, then Plaintiff's challenges to its "newfound standard" are moot because it will resume enforcing Section 412.7(1) and will no longer implement the "unclassified use" approach. The Court agrees. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981-82 (6th Cir. 2012) ("This Court has noted that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties and that such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.") (citation and quotation marks omitted). Moreover, in its response to the motion to dismiss, Plaintiff fails to address this argument altogether, and therefore, the Court may deem this argument as conceded. *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments

that the plaintiff failed to address as conceded.") (citation and quotation marks omitted). However, Plaintiff's claims also fail for separate and distinct reasons, which the Court will address in more detail. Accordingly, the Court grants Defendants' motion to dismiss in full.

### B. Count I: Declaration of Rights

Count I seeks a "declaration of rights" that Plaintiff is entitled to an issuance of a permit and that "the newly imposed standards for billboard approval are arbitrary, capricious, and unreasonable." (First Am. Compl. ¶ 28.) In pleading Count I, Plaintiff claims that Defendants' actions are "illegal and invalid." (*Id.* ¶ 27.) However, Plaintiff does not tie Count I to the violation of any statutory or constitutional provision or other legal wrong. Construing this claim in the light most favorable to Plaintiff and drawing reasonable inferences in its favor, the Court assumes that Count I is based on an argument that Defendants violated Plaintiff's due process rights. *See e.g. Dubuc v. Green Oak Twp.*, 810 F. Supp. 867, 873 (E.D. Mich. 1992) ("The right not to be subject to 'arbitrary or capricious' action by a [local government] either by legislative or administrative action is commonly referred to as a 'substantive due process right.'") (citation and quotation marks omitted).

"[B]oth procedural[7] and substantive[8] due process claims require [a plaintiff] to show that [it] has a property interest that was deprived." *Wayne Watson Enters., LLC v. City of Cambridge*, 751 F. App'x 760, 763 (6th Cir. 2018). In pleading Count I, Plaintiff does not identify a single property interest that was deprived by Defendants. Moreover, the Court previously found that Plaintiff had no protected property interest in a permit to build

---

[7] To establish a procedural due process claim, the plaintiff must demonstrate 1) a property interest protected by the Due Process Clause; 2) deprivation of that interest, and 3) "the state did not afford [it] adequate procedural rights prior to depriving [it] of the property interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

[8] To plead a substantive due process claim, the plaintiff must prove that 1) "the plaintiff ha[d] a constitutionally protected property or liberty interest," and 2) the action was "arbitrary and capricious." *Andreano v. City of Westlake*, 136 F. App'x 865, 870-71 (6th Cir. 2005).

13

billboards. (DE 15 at 16.) Thus, Plaintiff's claim for a declaration of rights fails as a matter of law, and the Court dismisses the claim.[9]

## C. Count II: Violations of Plaintiff's First Amendment Rights Under 42 U.S.C. §§ 1983 and 1988

In its First Amended Complaint, Plaintiff claims that Defendants have violated its First Amendment rights because Defendants have "unlawfully refused to issue a duly approved and granted permit" while subjecting it to a "newfound standard and application process for billboard approval." (First Am. Compl. ¶ 32.) According to Plaintiff, this constitutes a prior restraint of its First Amendment rights.

"A prior restraint exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Bronco's Ent., Ltd. v. Charter Twp. of Van Buren*, 421 F.3d 440, 444 (6th Cir. 2005) (citation and quotation marks omitted). The illuminating concerns associated with prior restraints are the risks of censorship and "thought control." *Schmitt v. LaRose*, 933 F.3d 628, 637 (6th Cir. 2019); *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 509 (6th Cir. 2001). Generally applicable laws do not constitute prior restraints if the laws govern other types of activities instead of singling out expressive conduct. *Bronco's Ent., Ltd.*, 421 F.3d at 445 (finding that an ordinance requiring site plan approval for all new land uses was not a prior restraint because it was "applicable to all commercial uses, not just those that involve protected speech"). This is because generally applicable laws "that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the

---

[9] For the same reasons, any argument that Plaintiff's declaration of rights claim is instead based on Section 412.7(1) also fails. Moreover, Section 2 of the Kentucky Constitution is coextensive with due process under the United States Constitution. *Jones v. Perry Cnty. Fiscal Ct.*, 185 F. Supp. 3d 947, 963 (E.D. Ky. 2016). Thus, to the extent the Court may construe Count I as arising under state rather than federal law, that claim is unsuccessful.

words about to be spoken" do not pose similar risks of censorship and control. *Wilson v. Lexington-Fayette Urb. Cnty. Gov't*, 201 F. App'x 317, 323 (6th Cir. 2006) (citation and quotation marks omitted).

The Court first reminds Plaintiff that, as the Court previously held, the process for obtaining approval from the BOA is separate from the process for obtaining a permit from Defendants. (DE 15 at 13.) Therefore, Plaintiff mischaracterizes the nature of the permit— Defendants have not approved or granted the permit. The BOA has only provided approval for digital billboards at the proposed site locations.

As for Defendants' new application process for off-premises commercial signs, the Court cannot find that the process constitutes a prior restraint because it applies to any type of unclassified use, not just those uses involving protected speech or other expressive conduct. After an application for an unclassified use is submitted to the Planning and Zoning Commission, the Commission "make[s] a determination as to whether an unclassified use is appropriate within a given zoning classification, taking into consideration the classified uses most closely related to the use being proposed and the zoning classifications in which such uses are permitted or conditional uses." (DE 21-1 at 16.) "When the Commission has determined which, if any, zoning classification is appropriate for the proposed unclassified use[,] it shall further determine whether such use shall be a permitted use or a conditional use within such zoning classification." (*Id.*) Absent from these provisions is any indication that unclassified uses that involve protected speech are singled out from other unclassified uses in the application process. Indeed, the applicable provisions do not reference expressive conduct at all. By its terms, the process is not aimed at expressive conduct and any determinations regarding the unclassified uses are not made on the basis of ongoing expression. Instead, the process is based on the analysis of closely related classified uses and the appropriate zoning classifications for those uses. Because the process does not

differentiate between expressive conduct and other activity, the process does not pose the same risks of censorship or thought control commonly associated with prior restraints.

To the extent that Plaintiff contends that the Court should construe its prior restraint claim as one based upon Section 412.7(1), that claim also fails. The prior restraint doctrine does not apply to commercial speech. *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 695 (6th Cir. 2022). Section 412.7(1) explicitly regulates "off premises business or commercial signs," which are defined as signs "advertis[ing] a business, commercial establishment, product, or service." (DE 15 at 3-4.) Therefore, Section 412.7(1) solely regulates commercial speech, not non-commercial speech. *North Olmsted Chamber of Com. v. City of North Olmsted*, 86 F. Supp. 2d 755, 769 n.9 (N.D. Ohio 2000) ("The Supreme Court has generally categorized signs which identify a business and advertise a product or service as forms of commercial speech."). As such, Section 412.7(1) cannot constitute a prior restraint.

Plaintiff argues that the speech on its proposed billboards will include both commercial and non-commercial speech. While Plaintiff submitted examples of what the content of its billboards *may* include, Plaintiff has not pleaded any facts to support that the specific content of the billboards has been set in stone such that Plaintiff could plausibly allege that the billboards will display both commercial and non-commercial speech. The Court therefore has doubts that Plaintiff has shown "above the speculative level" that its proposed billboards will contain non-commercial speech. *Bell Atl. Corp.*, 550 U.S. at 555.

Regardless of whether the speech is commercial or non-commercial, a prior restraint is still permissible if it is content-neutral, "narrowly tailored to serve a significant governmental interest," and "leave[s] open ample alternatives for communication." *Int'l Outdoor, Inc.*, 974 F.3d at 698. Put simply, a content-neutral prior restraint must pass muster under the intermediate scrutiny standard. *Id.* at 703. This is with the caveat that

the regulation "must not delegate overly broad licensing discretion to official decision-makers." *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012).

As the Court previously found, Section 412.7(1) is a content-neutral regulation that passes intermediate scrutiny, and Plaintiff has failed to establish that Section 412.7(1) has an impermissible purpose.[10] Further, Plaintiff has not otherwise alleged that Section 412.7(1) delegates overly broad licensing discretion to Defendants. Therefore, even if Section 412.7(1) is a prior restraint (it is not), the regulation does not violate Plaintiff's First Amendment rights. The Court accordingly dismisses Count II.

### D. Remaining Claims

Count III (injunctive relief), Count IV (unlawful custom and practice under 42 U.S.C. § 1983), Count V (attorney's fees under 42 U.S.C. § 1988), and Count VI (punitive damages) are all derivative claims based on Counts I and II. Because Counts I and II fail, these claims must fail also. Therefore, the Court dismisses Plaintiff's remaining claims.

## IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

---

[10] For purposes of a motion to dismiss, the Court may consider the permit that Defendants previously issued to Lamar and that Defendants attached to their motion to dismiss briefing. (*See* DE 25-1.) On a motion to dismiss, if the Court considers "matters outside the pleadings," "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may still consider a document outside of the pleadings on a motion to dismiss if the document is "referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (citation and quotation marks omitted). Plaintiff references Lamar's permit in its First Amended Complaint. (First Am. Compl. ¶ 16.) The permit is also central to Plaintiff's argument that its application was treated differently than Lamar's, demonstrating an impermissible purpose. The exhibit shows that Lamar had a pre-existing permit that was subject to Section 412.7(1)'s grandfathering exception, necessitating differences in how Defendants treated Lamar's previous application as compared to Plaintiff's instant application. As discussed *supra*, this defeats Plaintiff's argument that Section 412.7(1) has an impermissible purpose. (*See* First Am. Compl. ¶ 16; DE 24 at 7-8.)

1. Defendants' motion to dissolve the preliminary injunction (DE 18) is GRANTED, and the preliminary injunction enjoining Defendants from enforcing Section 412.7(1) of the City of Richmond's Development Ordinance is DISSOLVED;

2. Defendants' motion to dismiss is GRANTED (DE 23);

3. Plaintiff's claims are DISMISSED without prejudice;

4. The Court will enter a judgment consistent with this opinion; and

5. This matter is STRICKEN from the Court's active docket.

This 2nd day of December, 2022.

*Karen K. Caldwell*

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY